UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
VINCENT EMILIO,                                              :
                                      Petitioner,            :
                                                             :          11 Civ. 3041 (JPO)
                          -v-                                :
                                                             :          OPINION AND ORDER
SPRINT SPECTRUM L.P., d/b/a SPRINT PCS,                      :
                                      Respondent.            :
                                                             :
------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

        This is an action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to

confirm a Partial Arbitration Award terminating arbitration proceedings and authorizing

Petitioner Vincent Emilio ("Emilio") to pursue a putative class action against Defendant Sprint

Spectrum L.P. d/b/a Sprint PCS ("Sprint") in court.  Before the Court are Emilio's renewed

motion to confirm the award, Sprint's cross-petition to vacate the award in part, and Sprint's

motion to strike Emilio's request for leave to file a proposed class action complaint.  For the

reasons that follow, Emilio's motion is granted and Sprint's cross-petition and motion to strike

are denied.

I.      **Background**

        Unless otherwise indicated, the following facts are taken from the allegations in the

Petition (Dkt No. 1) and submissions made in connection therewith.

        A.      **The Parties**

        Emilio is a New York resident and customer of Sprint wireless telephone service.  Sprint

is a Delaware limited partnership with its principal offices located in Kansas.  Sprint is wholly

owned by Sprint Nextel Corporation, a Kansas corporation with its principal executive offices

located in Kansas.

1

### B.     The Arbitration Agreement

The Customer Agreement between Emilio and Sprint contains an Arbitration Agreement, which provides, in relevant part:

> **MANDATORY ARBITRATION OF DISPUTES.  INSTEAD OF SUING IN COURT, YOU AND SPRINT AGREE TO ARBITRATE ANY AND ALL CLAIMS, CONTROVERSIES OR DISPUTES AGAINST EACH OTHER ARISING OUT OF OR RELATING TO THIS AGREEMENT . . . .  THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT[,] AND ITS PROVISIONS, NOT STATE LAW, GOVERN ALL QUESTIONS OF WHETHER A CLAIM IS SUBJECT TO ARBITRATION.**
>
> **YOU AND SPRINT FURTHER AGREE THAT NEITHER SPRINT NOR YOU WILL JOIN ANY CLAIM WITH THE CLAIM OF ANY OTHER PERSON OR ENTITY IN A LAWSUIT, ARBITRATION OR OTHER PROCEEDING; THAT NO CLAIM EITHER SPRINT OR YOU HAS AGAINST THE OTHER SHALL BE RESOLVED ON A CLASS-WIDE BASIS; AND THAT NEITHER YOU NOR SPRINT WILL ASSERT A CLAIM IN A REPRESENTATIVE CAPACITY ON BEHALF OF ANYONE ELSE.  IF FOR ANY REASON THIS ARBITRATION PROVISION DOES NOT APPLY TO A CLAIM, WE AGREE TO WAIVE TRIAL BY JURY.**

(Petition, Ex. A ("Arbitration Agreement") at 7-8.)  The agreement further provides that "[t]he arbitration will be conducted by and under the then-applicable rules of JAMS or the NAF,"[1] and "[t]he arbitrator's decision and award is final and binding . . . ."  (*Id.* at 8.)  Finally, the agreement "is governed by and must be construed under federal law and the laws of the State of Kansas, without regard to choice of law principles."  (*Id.*)

### C.     The Arbitration and Judicial Proceedings

On January 4, 2005, Emilio filed a Demand for Class Arbitration, asserting that Sprint's practice of charging customers a monthly fee to satisfy the New York State Excise Tax violated

---

[1] JAMS ("Judicial Arbitration and Mediation Services") and the NAF ("National Arbitration Forum") are providers of alternative dispute resolution services.

New York Tax Law § 186-e and New York General Business Law § 349 and constituted unjust enrichment.  He argued that the tax was imposed solely upon Sprint and could not be passed on to customers, and estimated a class of more than 2 million New York Sprint customers.

In March 2005, Kathleen A. Roberts was appointed as the arbitrator in the JAMS forum. During February 2006, the parties submitted briefing regarding the enforceability of the Arbitration Agreement's class action waiver.  Emilio subsequently filed a First Amended Demand for Class Arbitration, adding a claim under Kansas's Unfair Trade and Consumer Protection Act ("KCPA"), Kan. Stat. 50-623 *et seq.*  (Dkt. No. 7, Ex. 1.)  The KCPA prohibits a supplier from engaging in any deceptive act or practice in connection with a "consumer transaction," which is defined as "a sale, lease, assignment, or other disposition for value of property or services within this state to a consumer."  *Id.* 50-624(c).  The statute sets forth private remedies available to consumers, including class actions, and provides that "a consumer may not waive or agree to forego rights or benefits under this act."  *Id.* 50-634(2)(d); 50-625.

On October 25, 2006, Arbitrator Roberts issued a decision holding that the class action waiver was unenforceable in light of the KCPA's anti-waiver provision.  (Petition, Ex. B ("Oct. 2006 decision").)  She determined that she had jurisdiction to resolve this issue because it was a "controversy or dispute" "arising out of or related to" the Arbitration Agreement, and because the agreement incorporated JAMS Comprehensive Rule 11 and Streamlined Rule 8, which both provided:

> Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability as a preliminary matter.

(*Id.* at 6 n.1.)  The arbitrator rejected Sprint's argument that the KCPA did not apply to the dispute because the services provided to Emilio were not provided "within this state," reasoning that Sprint's operations are headquartered in Kansas, and it would be "manifestly unfair" for Sprint to require customers to agree to the application of Kansas law "and at the same time deny application of its consumer protection statute."  (*Id.* at 9 & n.2.)[2]

Following this decision, Sprint filed a motion raising as a defense to arbitration a settlement release ("*Benney/Lundberg* settlement") arising out of a Kansas state court class action.  On July 16, 2008, Arbitrator Roberts denied the motion because, *inter alia*, the settlement could not satisfy the constitutional requirement of adequacy of representation.  (Dkt. No. 17, Ex. 5 ("July 2008 decision").)  On August 8, Sprint filed a motion in the Kansas state court that approved the settlement seeking to enjoin Emilio from continuing to arbitrate or litigate his claims in any forum.  On August 11, Emilio filed a petition in this Court to compel Sprint to continue arbitrating and to enjoin it from proceeding in Kansas state court.  On November 6, 2008, Judge Jones granted Emilio's petition.  *Emilio v. Sprint Spectrum, L.P.*, No. 08 Civ. 7147 (BSJ), 2008 WL 4865050 (S.D.N.Y. Nov. 6, 2008), *aff'd*, 315 Fed. App'x 322 (2d Cir. 2009).

The parties subsequently returned to arbitration, engaging in discovery and briefing related to Emilio's motion for class certification during the remainder of 2009.  Decision on the issue was delayed pending settlement negotiations.  On April 27, 2010, the United States Supreme Court issued its decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), holding that under the FAA a party cannot be compelled to submit to class arbitration

---

[2] The arbitrator rejected Emilio's argument that the class action waiver was unconscionable under Kansas state law.  (Oct. 2006 decision at 15.)

4

absent a contractual basis for finding that it had agreed to do so.  On October 19, 2010, Sprint filed a motion for reconsideration of the October 2006 decision in light of *Stolt-Nielsen*.

On December 27, 2010, Arbitrator Roberts issued a decision holding that *Stolt-Nielsen* precluded Sprint from being compelled to proceed in class arbitration.  (Petition, Ex. C ("Dec. 2010 decision").)  At the same time, she observed that *Stolt-Nielsen* "says nothing about preemption or the unenforceability of class preclusion provisions based upon state law," and that requiring Emilio to proceed in bilateral arbitration would be tantamount to enforcing the Arbitration Agreement as written "notwithstanding the finding of unenforceability" under the KCPA.  (*Id.* at 5-7.)  Therefore, she declined to "give Sprint the benefit of a class preclusion provision that has been found unenforceable *and* the benefit of an arbitral forum," and concluded that "[Emilio] cannot be compelled to proceed with a bilateral arbitration, and must be given the opportunity to pursue his class claims in a court action."  (*Id.* at 7.)  In support of this remedy, she cited the Second Circuit's decision in *Fensterstock v. Educ. Partners*, which held that a class action plaintiff could not be compelled to proceed in bilateral arbitration if the arbitration agreement's class action waiver is unconscionable under state law.  611 F.3d 124 (2d Cir. 2010), *vacated and remanded*, *Affiliated Computer Servs., Inc. v. Fensterstock*, 131 S. Ct. 2989 (2011).  "Had this issue arisen in the posture of the *Fensterstock* case," she reasoned, "Sprint would be required to defend a putative class action in court (or, *if plaintiff and Sprint agreed*, could proceed with a class-wide arbitration)."  (Dec. 2010 decision at 7.)  Consequently, she deemed it appropriate to give Sprint and Emilio the option to agree to class arbitration or bilateral arbitration, respectively, and to permit Emilio to proceed in court if an agreement could not be reached.  (*Id.*)

During a conference on January 28, 2011, Sprint stated that it would not agree to participate in class arbitration, and Emilio stated that he would not agree to participate in

bilateral arbitration.  Accordingly, on March 10, 2011, Arbitrator Roberts issued a Partial Final Award based upon the December 2010 decision.  (Petition, Ex. A ("Award").)

On May 4, 2011, Emilio filed a petition asking this Court to (i) confirm the Award, (ii) direct, in accordance with the Award, that his claims proceed in this Court as a putative class action, and (iii) "grant[] such other relief as the Court deems just and proper."  (Petition at 1.)[3] Emilio filed a motion to confirm the award on May 12.  (Dkt. No. 3.)  On May 27, Sprint filed an answer and cross-petition seeking to confirm the part of the Award holding that it could not be compelled to proceed in class arbitration, and vacate the part holding that Emilio could not be compelled to proceed in bilateral arbitration.  (Dkt. No. 11.)

On March 16, 2012, Judge Jones granted Sprint's cross-petition, concluding that the enforceability of the class action waiver was a question of arbitrability for the court—not the arbitrator—to decide, and the waiver was enforceable because the anti-waiver provision of the KCPA was preempted by the FAA under *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).  *Emilio v. Sprint Spectrum, L.P.*, 11 Civ. 3041 (BSJ), 2012 WL 917535 (S.D.N.Y. Mar. 16, 2012).  On February 15, 2013, the Second Circuit reversed in part.  It affirmed the judgment that Sprint could not be compelled to proceed in class arbitration, which neither party challenged. However, it vacated the remainder, reasoning that although the enforceability of a class action waiver is generally a question of arbitrability for the court, here the parties had unambiguously delegated such questions to the arbitrator by incorporating JAMS Comprehensive Rule 11 and Streamlined Rule 8 into the Arbitration Agreement.  *Emilio v. Sprint Spectrum, L.P.*, 508 Fed.

---

[3] Venue is proper in this district pursuant to 9 U.S.C. § 9 because the Award was made in this district.

App'x 3, 5 (2d Cir. 2013).  The Court remanded the judgment for "the district court to address Sprint's other arguments [for vacatur] in the first instance."  *Id.* at 6-7.[4]

On July 11, 2013, Emilio filed a renewed motion to confirm the Award, which essentially mirrored his original motion to confirm the Award but also requested leave to file a proposed class action complaint.  (Dkt. No. 31 ("Renewed Motion"); Dkt. No. 33, Ex. 3.)  That same day, Sprint filed a motion to vacate the Award in part.  (Dkt. No. 34.)  On August 15, 2013, Sprint filed a motion to strike Emilio's request for leave to file a class action complaint.  (Dkt. No. 41.)

## II.   Legal Standards

### A.   Motion to Confirm or Vacate an Arbitration Award

The FAA sets forth a streamlined process for confirmation, vacatur, or modification of an arbitration award.  *Hall Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).  Under section 9, a "court *must* grant [a motion to confirm an award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 . . . ."  9 U.S.C. § 9 (emphasis added).  Section 10 provides, in relevant part, that an award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).[5]  The basis for vacating an award is consent: "because arbitration is 'a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'"  *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)).

---

[4] This case was reassigned from Judge Jones to the undersigned on April 1, 2013.  (Dkt. No. 25.)

[5] Section 11, which is not applicable in this case, provides several grounds for modification or correction of an award.  9 U.S.C. § 11.

A party moving to vacate an award bears a "very high" burden. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). The Second Circuit has "consistently accorded the narrowest of readings [to section 10(a)(4)] in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *ReliaStar*, 564 F.3d at 85 (citations omitted); *see also Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1970) ("[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated."). In light of this narrow scope of review, "in considering a section 10(a)(4) challenge, '[t]he principal question for the reviewing court is whether the arbitrator's award draws its essence' from the agreement to arbitrate, 'since the arbitrator is not free merely to dispense his own brand of industrial justice.'" *Reliastar*, 564 F.3d at 85 (quoting *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005)).

The Second Circuit has recognized a "judicial gloss" on section 10(a)(4) which also permits courts to vacate awards for "manifest disregard of the law." *See T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339-40 (2d Cir. 2010).[6] "[T]o modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998). Manifest disregard exists "only in 'those exceedingly rare instances where some egregious impropriety on the part of the arbitrator[] is apparent.'" *T. Co.*, 592 F.3d at 339 (citation omitted). "Such impropriety requires 'more than error or

---

[6] It is questionable whether the manifest disregard standard survives the Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013). Assuming *arguendo* that it does, Sprint has failed to demonstrate manifest disregard in this case, as explained below.

misunderstanding with respect to the law, or an arguable difference regarding the meaning or applicability of law urged upon an arbitrator." *Westminster Secs. Corp. v. Petroleum Energy Ltd.*, No. 10 Civ. 7893 (DLC), 2011 WL 166924, at *5 (S.D.N.Y. Jan. 19, 2011) (quoting *T. Co.*, 592 F.3d at 339). "'[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his decision.'" *ReliaStar*, 564 F.3d at 86 (citations omitted). "Even where explanation for an award is deficient or non-existent," courts should "confirm it if a justifiable ground for the decision can be inferred from the facts of the case." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003). "With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract." *T. Co.*, 592 F.3d at 339.

**B.      Motion to Strike**

Pursuant to Federal Rule of Civil Procedure 12(f), a court may, *sua sponte* or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[M]otions to strike are viewed with disfavor and infrequently granted." *In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003).

**III.   Discussion**

**A.      The Award**

This Court and the Second Circuit have already confirmed that portion of the Award holding that Sprint cannot be compelled to proceed in class arbitration. Therefore, the only remaining issue is whether to confirm or vacate the part of the Award providing that Emilio cannot be compelled to proceed in bilateral arbitration and must be given the opportunity to

pursue a class action in court.  *See, e.g.*, *U.S. v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991)

(describing the law of the case doctrine).  Sprint offers a number of grounds for vacatur under

section 10(a)(4), but none is sufficient to meet its heavy burden.

### 1.     Manifest Disregard of the Law

Several of Sprint's arguments in support of finding manifest disregard of the law rely

upon changes in the law after the issuance of the Award.  Sprint observes, for instance, that post-

*Concepcion* the FAA preempts the KCPA's anti-waiver provision, and that *Fensterstock*—relied

upon by the arbitrator in fashioning relief—is no longer good law.  However, manifest disregard

of the law can exist only where the arbitrator ignored or refused to apply a governing legal

principle that was "well defined, explicit, and clearly applicable to the case."  *Halligan*, 148 F.3d

at 202.  It follows that "an intervening change of law, standing alone, [cannot] provide[] grounds

for vacating an otherwise proper arbitral award."  *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113,

125 (2d Cir. 2011).[7]

Undaunted, Sprint asserts that it was apparent even pre-*Concepcion* that the FAA

preempted the KCPA's anti-waiver provision, despite the fact that the Supreme Court granted

certiorari in *Concepcion* to resolve a conflict in the lower courts on this very issue.[8]  In support,

Sprint cites three cases it brought to the arbitrator's attention: *Carter v. SCC Odin Operating Co.*,

927 N.E.2d 1207 (Ill. 2010), *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), and *Wilson v. Mike*

---

[7] Sprint proposes that the Court remand the decision to the arbitrator for reconsideration in light
of *Concepcion*.  None of the limited grounds for remand are present in this case, *see, e.g.*, *Ottley
v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987), and the sole case cited by Sprint, *LLT Int'l
Inc. v. MCI Telecomms. Corp.*, is inapposite because there the court found that the arbitrator had
manifestly disregarded the law, 18 F. Supp. 2d 349 (S.D.N.Y. 1998).

[8] Sprint draws a distinction between state statutes that invalidate class action waivers, such as the
KCPA, and state unconscionability laws.  This distinction has generally not been recognized in
the courts, including in this case.  *See Emilio*, 2012 WL 917535, at *3 (relying upon *Concepcion*,
which addressed preemption of California's unconscionability rule, to conclude that the KCPA's
anti-waiver provision was preempted).

*Steven Motors, Inc.*, 111 P.3d 1076 (Kan. App. 2005). *Carter* is distinguishable because the

statutory provision at issue broadly prohibited waiver of the right to litigate one's claims in court,

effectively invalidating any agreement to arbitrate such claims. 927 N.E.2d at 1212. And while

*Ting* is relevant insofar as it addressed preemption of a California anti-waiver provision similar

to that in the KCPA, it was merely one case on one side of the divide leading to *Concepcion*, and

its reasoning was rejected by many other courts. *See, e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d

25, 60-61 & n.23 (1st Cir. 2006) (disagreeing with *Ting* and citing cases).

     Only *Wilson*, a Kansas state court decision addressing preemption of the anti-waiver

provision of the KCPA, could plausibly create sufficient legal clarity to warrant a finding of

manifest disregard of the law. Yet that unpublished opinion—lacking in precedential value and

disfavored for citation, *see* Kan. Sup. Ct. Rule 7(f)—is distinguishable in several material

respects. There, the plaintiff brought claims on behalf of herself, not a class, and did not argue

that proceeding in bilateral arbitration would affect her ability to recover. 111 P.3d at 1076, at

*7. Accordingly, the Court's preemption holding was limited to the question whether the

legislature "express[ed] its intent to prohibit arbitration of KCPA claims." *Id.* As in *Carter*, the

Court recognized that a wholesale prohibition on arbitration of KCPA claims would be

preempted by the FAA. But waiving one's right to file a lawsuit is not the same as waiving

one's right to proceed as a class, and the Court did not address whether the KCPA would be

preempted if a plaintiff brought a class proceeding in the first instance and clearly sought to

invoke the benefits of aggregate litigation.[9] The arbitrator's conclusion that the anti-waiver

provision was not preempted under such circumstances was not only permissible under *Wilson*,

---

[9] Notably, although Sprint now argues that *Wilson* was dispositive of the preemption issue, it
took a slightly different view during arbitration, stating that "the Court of Appeals of Kansas
*called into serious doubt* whether Section 50-625 of the KCPA renders class action waivers
unenforceable." (Dkt. No. 17, Ex. 3 at 13 n.7 (emphasis added).)

but entirely reasonable in light of the long-standing principle that a party agreeing to arbitrate a statutory claim "does not forgo substantive rights afforded by the statute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *see also In re Am. Express Merchants' Litig.*, 667 F.3d 204, 218-19 (2d Cir. 2012) ("*AmEx*") (holding that an arbitration clause was unenforceable where its class action waiver would preclude plaintiffs from being able to vindicate their statutory rights), *rev'd sub nom. Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013).

Sprint next contends that *Fensterstock* does not support the arbitrator's choice of relief because that case arose in a different procedural posture: whereas Emilio brought class arbitration proceedings, the plaintiff in *Fensterstock* initially sued in court. However, the Second Circuit has already determined that the enforceability of the class action waiver was a question for the arbitrator. Thus, even if Emilio had sued in court in the first instance, Sprint would have simply compelled him to arbitrate. In any event, Sprint cannot seriously challenge the arbitrator's chosen remedy when the Second Circuit condoned the same remedy in *AmEx*. 667 F.3d at 219.[10]

Finally, Sprint asserts that the KCPA clearly did not apply to Emilio's claims because the services at issue were not consumer transactions that occurred "within th[e] state" of Kansas. Kan. Stat. 50-624(c). Arbitrator Roberts initially rejected this argument in October 2006, citing another arbitration decision and the Kansas choice-of-law provision. (Oct. 2006 decision at 9 n.2.) Sprint subsequently raised *Montgomery v. Sprint Spectrum, L.P.*, which held the KCPA to be inapplicable in very similar circumstances and expressly rejected the plaintiff's reliance upon a Kansas choice-of-law provision. 2007 WL 3274833, at *6 (D. Kan. Nov. 6, 2007). Although

---

[10] That *AmEx* was subsequently vacated by the Supreme Court—after the issuance of the Award—does not indicate that the Second Circuit's choice of remedy was in manifest disregard of the law.

*Montgomery* was issued after the October 2006 decision, the arbitrator summarily considered and rejected its conclusions in July 2008.  (July 2008 decision at 8; *see also* Dkt. No. 17, Ex. 6.) At that time, *Montgomery* was arguably contradicted by at least one decision.  *See Watkins v. Roach Cadillac, Inc.*, 637 P.2d 458, 461-63 (Kan. Ct. App. 1981) (holding that a Kansas defendant may be liable under the KCPA if it solicited services outside of the state).

While Sprint's reliance upon *Montgomery* is more persuasive than its prior arguments, it still does not demonstrate that the arbitrator acted in manifest disregard of the law. Fundamentally, all of Sprint's objections misconceive the extremely limited scope of judicial review under section 10(a)(4).  The question for this Court is not whether the arbitrator misconstrued precedent or even committed serious legal error, but whether there is a "*barely colorable justification* for the outcome reached."  *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (citation omitted).  Sprint's citation to a handful of ambiguous and disputed cases is not enough to overcome the "extreme deference" this Court must accord to the arbitrator.  *Id.* at 189.

### 2.    Scope of the Arbitrator's Powers

Sprint also argues that the arbitrator exceeded her powers under the Arbitration Agreement and JAMS rules, relying primarily upon Rule 2 of the JAMS Class Action Procedures.  Rule 2 provides:

> Once appointed, the Arbitrator shall determine as a threshold matter whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.

(Oct. 2006 decision at 5 (citing rule).)  Sprint interprets this rule to give the arbitrator two options: (i) find the class action waiver void and proceed with class arbitration, or (ii) find the waiver valid and proceed with bilateral arbitration.  Emilio argues that the rule merely requires the arbitrator to determine whether or not to permit class arbitration, and does not imply any limitation on what she may do afterwards.  The Court agrees.  Nothing in Rule 2 requires the

arbitrator to order bilateral arbitration in the event that the class action waiver is unenforceable. Moreover, Sprint's interpretation is undermined when Rule 2 is read *in pari materia* with JAMS Comprehensive Rule 24 and Streamlined Rule 19, which authorize the arbitrator to fashion "any remedy or relief that is just and equitable within the scope of the Parties' agreement . . . ." (Dkt. No. 17, Ex. 2.)

In any event, this argument based upon competing, reasonable interpretations of procedural rules is subject to the same deferential analysis as before. JAMS Comprehensive Rule 11 and Streamlined Rule 8, cited by the arbitrator in her October 2006 decision, provide that "[o]nce appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and the conduct of the Arbitration Hearing." (Petition at 4.) In other words, the parties unambiguously agreed that the arbitrator, not the Court, would determine what next steps she could take under Rule 2, and what remedies she could award under Rules 24 and 19. (*Id.*)[11]

The Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter* is instructive in this regard. 133 S. Ct. 2064 (2013). There, after the arbitrator issued an award construing the arbitration agreement to permit class arbitration under *Stolt-Nielsen*, Oxford moved to vacate under section 10(a)(4) on the ground that the arbitrator exceeded his powers. *Id.* at 2067.[12] In a

---

[11] The parties also dispute at length the meaning of the provision in the class action waiver providing "IF FOR ANY EVENT THIS ARBITRATION PROVISION DOES NOT APPLY TO A CLAIM, WE AGREE TO WAIVE TRIAL BY JURY." (Arbitration Agreement at 8.) For the reasons cited in this section, the Court must defer to the arbitrator's interpretation, which is entirely defensible.

[12] The Court stated that it granted certiorari to resolve a split among the circuit courts, citing and ultimately agreeing with the Second Circuit's conclusion in *Jock*. *Oxford Health*, 133 S. Ct. at 2068 n.1.

unanimous decision authored by Justice Kagan,[13] the Court affirmed denial of the motion,

reasoning that "[t]he sole question for us is whether the arbitrator (even arguably) interpreted the

parties' contract, not whether he got its meaning right or wrong," and it was clear from the award

that the arbitrator's conclusion was based upon his construction of the contract. *Id.* at 2068-69.

Although Oxford argued, quite persuasively, that the arbitrator had misconstrued the arbitration

agreement in light of *Stolt-Nielsen*, the Court declined to reach the issue as it was not the proper

subject of judicial review:

> We reject this argument because, and only because, it is not
> properly addressed to a court.  Nothing we say in this opinion
> should be taken to reflect any agreement with the arbitrator's
> contract interpretation, or any quarrel with Oxford's contrary
> reading.  All we say is that convincing a court of an arbitrator's
> error—even his grave error—is not enough.  So long as the
> arbitrator was 'arguably construing' the contract—which this was
> one was—a court may not correct his mistakes under § 10(a)(4).
> The potential for those mistakes is the price of agreeing to
> arbitration.  As we have held before, we hold again: "It is the
> arbitrator's construction [of the contract] which was bargained for;
> and so far as the arbitrator's decision concerns construction of the
> contract, the courts have no business overruling him because their
> interpretation of a contract is different from his."  The arbitrator's
> construction holds, however good, bad, or ugly.

*Id.* at 2070 (citations omitted).

Like Oxford, Sprint attacks the arbitrator's interpretation of the contract, as well as the

rules incorporated therein and the governing law applicable thereto.  Even if this Court agreed

with Sprint's reading, Sprint has failed to show that the arbitrator was not "arguably construing"

the contract, or that she committed *more* than "grave error."[14]  Although the relief chosen was

---

[13] Justice Alito, joined by Justice Thomas, concurred to note that the Court would have "little trouble" concluding that the arbitrator misinterpreted the arbitration agreement were it reviewing the contract *de novo*.  *Id.* at 2071 (Alito, J., concurring).

[14] Notably, the Second Circuit has twice relied upon the broad scope of the JAMS rules to hold issues—including the preclusive effect of the *Benney/Lundberg* settlement and the enforceability

somewhat novel, it is consistent with a reasonable interpretation of the relevant JAMS rules and satisfies this Court's limited review at the confirmation stage. *See, e.g.*, *Harper Ins. Ltd. v. Century Indem. Co.*, 819 F. Supp. 2d 270, 277-78 (S.D.N.Y. 2011) (observing that while an issue must be presented to the arbitrator for her to rule upon it, "there is no parallel *per se* rule that it is beyond the authority of the arbitrator[] to issue a remedy directed to an issue squarely before them unless it was requested by one of the parties," and confirming the relief awarded under the highly deferential standard of review).

The remainder of Sprint's arguments for vacatur are also unpersuasive. First, Sprint contends that because this Court and the Second Circuit have previously determined that this dispute is subject to arbitration, the arbitrator could not issue an award terminating arbitration to allow litigation. This argument ignores the fact that the instant issue has *already* been arbitrated, and the decision of the arbitrator is final and binding absent one of the limited grounds for vacatur, modification, or correction.[15]

Second, Sprint alleges that the arbitrator was dispensing her own brand of anti-arbitration justice, as evidenced by her statement that she did not want to "give Sprint the benefit of a class action preclusion provision that has been found unenforceable *and* the benefit of an arbitral forum." (Award at 7.) But the use of the term "benefit" is more a statement of fact than an indication of bias. Because Sprint sought to enforce the class action waiver as a basis for avoiding class arbitration, it was also undoubtedly the party that benefited from that ruling. And

---

of the class action waiver—to be within the purview of the arbitrator. *See Emilio*, 508 Fed. App'x at 5-6.

[15] Based upon the same misconception, Sprint ominously suggests that "[a]s a legal reality," even if Emilio files an action in court based upon the Award, "he will be met with a motion to compel arbitration that any court would be duty-bound to grant . . . ." (Dkt. No. 35 at 19 n.13.) Were it true that a party could, upon receiving an adverse arbitration decision, rely upon the same arbitration agreement to compel *re*-arbitration of the issue, the entire framework developed under the FAA would be upended.

because Emilio sought to proceed on a class basis but could no longer do so in arbitration, Sprint

would also be the party to benefit were the action to proceed—bilaterally—in an arbitral forum.

It was no more biased for the arbitrator to recognize the benefits of the class device than it was

for the Second Circuit to do so in *AmEx*.  554 F.3d at 312-20.

Finally, Sprint asserts that the arbitrator acted *ultra vires* by issuing an award which

purportedly "attempt[s] to dictate to a court how it must proceed with a yet-to-be-filed action."

(Dkt No. 13 at 21.)  The Award plainly states, however, that Emilio must be given an

"opportunity" to pursue his claims on a class basis in court.  To say that this constitutes an

"order" to this Court—presumably to permit Emilio to file a class complaint, which he is free to

do regardless—is inaccurate.  *Cf. Vaughn v. Leeds, Morelli & Brown, P.C.*, 315 Fed. App'x 327,

330 (2d Cir. 2009) (affirming arbitrators' authority to decide "whether [plaintiff] may pursue his

class action claims against defendants in court").

### B.     Emilio's Proposed Class Action Complaint

In its motion to strike, Sprint asserts that the Second Circuit's remand order authorizes

the Court to determine only whether to confirm or vacate the Award, and therefore precludes

consideration of Emilio's proposed class action complaint.  Sprint relies upon the following

sentence:

> Because the court did not address Sprint's other arguments for
> vacatur of the arbitral award, we not only vacate so much of the
> judgment as vacated the arbitral award in part, but also remand the
> case to the district court to address Sprint's other arguments in the
> first instance.

508 Fed. App'x at 6.

The mandate rule "compels compliance on remand with the dictates of the superior court

and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court."

*United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (citations omitted).  "To determine

whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *Id*. (citations omitted).

Sprint's proposed reading is unnaturally restrictive.  Read literally, the phrase "to address Sprint's other arguments in the first instance" would also illogically prevent this Court from considering Emilio's counterarguments.  Moreover, the final sentence of the order remands the judgment "for further proceedings consistent with this order."  Both Emilio's Petition and Renewed Motion to confirm the Award expressly sought three forms of relief: (i) confirmation of the award; (ii) an order that, in accordance with the Award, his claims proceed in this court as a putative class action; and (iii) such other relief as the Court deems just and proper.  (Petition at 1; Renewed Motion.)  Sprint was therefore on notice from the beginning that this Court could confirm the Award and allow Emilio to proceed with a putative class action, and there is nothing in the Second Circuit's order to preclude the Court from granting such relief.

Nor is it unusual to confirm an award and proceed with litigation in the same proceedings.  Emilio initiated arbitration proceedings in the first instance in this case, but he was also free to sue in court.  In that case, Sprint would have compelled him to arbitrate and, upon receiving an award, the parties would return to court for confirmation and further proceedings. The FAA does not require courts to forego efficiency.  As a practical matter, if the Court granted Sprint's motion to strike, Emilio would file a proposed class action complaint in a new action. This Court does not see any legal or practical reason to delay the inevitable.

**IV.      Conclusion**

For the foregoing reasons, it is hereby ordered that:

Emilio's motion to confirm the Award is GRANTED;

Sprint's cross-petition to vacate the Award in part is DENIED;

Sprint's motion to strike is DENIED; and

Emilio is granted leave to file a class action complaint on or before March 11, 2014.

The Clerk of Court is directed to terminate the motions at docket numbers 31, 34, and 41.

SO ORDERED.

Dated:  New York, New York
        February 11, 2014

J. PAUL OETKEN
United States District Judge