UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                  :

VINCENT EMILIO, individually and on behalf of :
all others similarly situated,                  :
                              Plaintiff,     :           11-CV-3041 (JPO)
                                                  :

                    -v-               :           OPINION AND ORDER
                                                  :

SPRINT SPECTRUM L.P., d/b/a SPRINT PCS,  :
                                  Defendant.  :
                                                  :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        Plaintiff Vincent Emilio ("Emilio") initially filed this action as a petition pursuant to the

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to confirm a Partial Arbitration Award.

The arbitrator's award terminated arbitration proceedings and authorized Emilio to pursue his

claims as a putative class action in court against Defendant Sprint Spectrum L.P., d/b/a Sprint

PCS ("Sprint").  In February 2014, this Court granted Emilio's motion to confirm the award, and

Emilio filed a Class Action Complaint (the "complaint").  Sprint now moves to dismiss the

complaint or to strike its class allegations.  For the reasons that follow, Sprint's motion is denied.

**I.**      **Background**[1]

        **A.**      **The Parties**

        Emilio is a New York resident and was a customer of Sprint wireless telephone service

during the relevant time period.  (Dkt. No. 48 ("Compl.") ¶ 7.)  Sprint is a Delaware limited

partnership with its principal offices located in Kansas.  Sprint is wholly owned by Sprint

---

[1] The following facts are taken from the allegations in the complaint, which are accepted as true
at this stage, from other submissions in connection with the instant motion, and from documents
that are relevant to the procedural history of the case.

Corporation, a Delaware corporation with its principal executive offices located in Kansas.  (*Id.* ¶ 8.)

### B.    Arbitration and Judicial Proceedings

The customer agreement between Emilio and Sprint contains an Arbitration Agreement, which provides for mandatory arbitration of disputes and states that class-wide resolution of claims is precluded.  (*See* Dkt. No. 1 ("Petition") Ex. A at 7-8).  Under the terms of the agreement, "[t]he arbitrator's decision and award is final and binding, and judgment on the award may be entered in any court with jurisdiction."  (*Id.* at 8.)  The agreement also provides that the agreement is "governed by and must be construed under federal law and the laws of the State of Kansas, without regard to choice of law principles."  (*Id.*)

On January 4, 2005, Emilio filed a Demand for Class Arbitration, asserting that Sprint's practice of charging customers a monthly fee to satisfy the New York State Excise Tax violated New York Tax Law § 186-e and New York General Business Law § 349 and constituted unjust enrichment.  He argued that the tax was imposed solely upon Sprint and could not be passed on to customers, and estimated a class of more than two million New York Sprint customers.

In March 2005, Kathleen A. Roberts was appointed as the arbitrator in the JAMS forum. In February 2006, the parties submitted briefing regarding the enforceability of the Arbitration Agreement's class action waiver.  Emilio subsequently filed a First Amended Demand for Class Arbitration, adding a claim under Kansas's Unfair Trade and Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623 *et seq.* (Dkt. No. 7, Ex. 1 ("Amended Demand").)  The KCPA prohibits a supplier from engaging in any deceptive act or practice in connection with a "consumer transaction," Kan. Stat. Ann. § 50-626(a), which is defined as "a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer," *id.* § 50-624(c).  The statute sets forth private remedies available to consumers,

including class actions, and provides that "a consumer may not waive or agree to forego rights or benefits under this act."  *Id.* §§ 50-634(d); 50-625.

On October 25, 2006, Arbitrator Roberts issued a decision holding that the class action waiver was unenforceable in light of the KCPA's anti-waiver provision.  (Petition, Ex. B ("Oct. 2006 decision").)  She determined that she had jurisdiction to resolve this issue because it was a "controversy or dispute" "arising out of or related to" the Arbitration Agreement, and because the agreement incorporated JAMS rules, which provided:

> [J]urisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability as a preliminary matter.

(*Id.* at 6 n.1 (quoting JAMS Comprehensive Rule 11(c); JAMS Streamlined Rule 8(c) (ellipsis in original).)  The arbitrator rejected Sprint's argument that the KCPA did not apply to the dispute because the services provided to Emilio were not provided "within this state," reasoning that:

> Sprint's operations are headquartered in Kansas, from which it unquestionably provides services to its customers throughout the United States. Moreover, it would be manifestly unfair for Sprint to require its customers to agree to the application of Kansas law, and at the same time deny application of its consumer protection statute.  Having chosen to impose Kansas law upon its customers, Sprint cannot be permitted to make a self-serving determination of which laws of Kansas will apply to disputes under the Arbitration Agreement.

(*Id.* at 9 & n.2.)  The arbitrator also rejected Emilio's argument that the class action waiver was unconscionable under Kansas state law.  (*Id.* at 10-15.)

Following this decision, Sprint filed a motion for summary disposition premised on the claimed non-applicability of the KCPA and on a settlement release ("*Benney/Lundberg* settlement") arising out of a Kansas state court class action.  On July 16, 2008, Arbitrator Roberts denied the motion because, *inter alia*, the settlement did not satisfy the constitutional requirement of adequacy of representation.  (Dkt. No. 17, Ex. 5 ("July 2008 decision").)  On

August 8, 2008, Sprint filed a motion in the Kansas state court that had approved the settlement seeking to enjoin Emilio from continuing to arbitrate or litigate his claims in any forum.  On August 11, Emilio filed a petition in this Court to compel Sprint to continue arbitrating and to enjoin it from proceeding in Kansas state court.  On November 6, 2008, Judge Jones granted Emilio's petition.  *Emilio v. Sprint Spectrum L.P.*, No. 08 Civ. 7147 (BSJ), 2008 WL 4865050 (S.D.N.Y. Nov. 6, 2008), *modified in part*, 2008 WL 4865182 (S.D.N.Y. Nov. 6, 2008), *aff'd*, 315 F. App'x 322 (2d Cir. 2009).

The parties subsequently returned to arbitration, engaging in discovery and briefing related to Emilio's motion for class certification during the remainder of 2009.  Decision on the issue was delayed pending settlement negotiations.  On April 27, 2010, the United States Supreme Court issued its decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), holding that under the FAA a party cannot be compelled to submit to class arbitration absent a contractual basis for finding that it had agreed to do so.  On October 19, 2010, Sprint filed a motion for reconsideration of the October 2006 decision in light of *Stolt-Nielsen*.

On December 27, 2010, Arbitrator Roberts issued a decision holding that *Stolt-Nielsen* precluded Sprint from being compelled to proceed in class arbitration.  (Petition, Ex. C ("Dec. 2010 decision").)  At the same time, she observed that *Stolt-Nielsen* "says nothing about preemption or the unenforceability of class preclusion provisions based upon state law," and that requiring Emilio to proceed in bilateral arbitration would be tantamount to enforcing the Arbitration Agreement as written "notwithstanding the finding of unenforceability" under the KCPA.  (*Id.* at 5-7.)  Therefore, she declined to "give Sprint the benefit of a class preclusion provision that has been found unenforceable *and* the benefit of an arbitral forum," and concluded that "[Emilio] cannot be compelled to proceed with a bilateral arbitration, and must be given the opportunity to pursue his class claims in a court action."  (*Id.* at 7.)  In support of her

determination of nonarbitrability, she cited the Second Circuit's decision in *Fensterstock v. Education Finance Partners*, which held that a class action plaintiff could not be compelled to proceed in bilateral arbitration if the arbitration agreement's class action waiver is unconscionable under state law.  611 F.3d 124 (2d Cir. 2010), *vacated and remanded*, *Affiliated Computer Servs., Inc. v. Fensterstock*, 131 S. Ct. 2989 (2011).  "Had this issue arisen in the posture of the *Fensterstock* case," she reasoned, "Sprint would be required to defend a putative class action in court (or, *if plaintiff and Sprint agreed*, could proceed with a class-wide arbitration)."  (Dec. 2010 decision at 7.)  Consequently, she interpreted the contract under applicable law to give Sprint and Emilio the option to agree to class arbitration or bilateral arbitration, respectively, and to permit Emilio to proceed in court if an agreement could not be reached.  (*Id.*)

During a conference on January 28, 2011, Sprint stated that it would not agree to participate in class arbitration, and Emilio stated that he would not agree to participate in bilateral arbitration.  Accordingly, on March 10, 2011, Arbitrator Roberts issued a Partial Final Award based upon the December 2010 decision.  (Petition, Ex. D ("Award").)

On May 4, 2011, Emilio filed a petition asking this Court (i) to confirm the Award, (ii) to direct, in accordance with the Award, that his claims proceed in this Court as a putative class action, and (iii) to "grant[] such other and further relief as the Court deems just and proper." (Petition at 1.)[2]  Emilio filed a motion to confirm the award on May 12.  (Dkt. No. 3.)  On May 27, Sprint filed an answer and cross-petition seeking to confirm the part of the Award holding that it could not be compelled to proceed in class arbitration, and vacate the part holding that Emilio could not be compelled to proceed in bilateral arbitration.  (Dkt. No. 11.)

---

[2] Venue is proper in this district pursuant to 9 U.S.C. § 9 because the Award was made in this district.

In March 2012, Judge Jones granted Sprint's cross-petition, concluding that the enforceability of the class action waiver was a question of arbitrability for the court—not the arbitrator—to decide, and that the waiver was enforceable because the anti-waiver provision of the KCPA was preempted by the FAA under *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). *Emilio v. Sprint Spectrum L.P.*, 11 Civ. 3041 (BSJ), 2012 WL 917535 (S.D.N.Y. Mar. 16, 2012). In January 2013, the Second Circuit vacated in part. It affirmed the judgment that Sprint could not be compelled to proceed in class arbitration, which neither party challenged. However, it vacated the remainder, reasoning that although the enforceability of a class action waiver is generally a question of arbitrability for the court, here the parties had unambiguously delegated such questions to the arbitrator by incorporating JAMS Comprehensive Rule 11 and Streamlined Rule 8 into the Arbitration Agreement. *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013). The court remanded the case for "the district court to address Sprint's other arguments [for vacatur] in the first instance." *Id.* at 6-7.[3]

In July 2013, Sprint filed a motion to vacate the arbitrator's award in part, and Emilio filed a cross-motion to confirm the award. (Dkt. Nos. 31, 34.) On February 11, 2014, the Court granted Emilio's request to confirm the arbitrator's award, denied Sprint's cross-motion to vacate, and granted Emilio leave to file a class action complaint. *Emilio v. Sprint Spectrum L.P.*, No. 11 Civ. 3041 (JPO), 2014 WL 902564 (S.D.N.Y. Feb. 11, 2014). The Second Circuit affirmed that decision by summary order in November 2014. *Emilio v. Sprint Spectrum L.P.*, 582 F. App'x 63 (2d Cir. Nov. 12, 2014). Emilio filed his complaint on February 25, 2014. (Dkt. No. 48.) On March 28, 2014, Sprint filed the present motion to dismiss the complaint or strike its class action allegations. (Dkt. No. 56.)

---

[3] This case was reassigned from Judge Jones to the undersigned on April 1, 2013. (Dkt. No. 25.)

## II.   Legal Standards

### A.   Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010). A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (alterations and internal quotation marks omitted).

### B.   Motion to Strike Class Allegations

Pursuant to Federal Rule of Civil Procedure 12(f), a court may, *sua sponte* or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 23 calls for a determination "whether to certify the action as a class action" at "an early practicable time after a person sues . . . as a class representative." Fed. R. Civ. P. 23(c)(1)(A).

"[M]otions to strike are viewed with disfavor and infrequently granted." *In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing

court to preemptively terminate the class aspects of litigation, solely on the basis of what is

alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which

they would otherwise be entitled on questions relevant to class certification." *Blagman v. Apple*

*Inc.*, No. 12 Civ. 5453 (ALC) (JCF), 2013 WL 2181709, at \*2 (S.D.N.Y. May 20, 2013) (ellipsis

and internal quotation marks omitted). District courts frequently have deferred the Rule 23

determination until the class certification stage, after the development of a "more complete

factual record." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012).

However, "a motion to strike that addresses issues separate and apart from the issues that will be

decided on a class certification motion is not procedurally premature." *Chen-Oster v. Goldman,*

*Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotation marks omitted).

## III.    Discussion

Sprint's present motion asserts two principal challenges to Emilio's putative class action

complaint. First, Sprint argues that Emilio has failed to state a claim under the KCPA. It

contends that the Kansas statute does not apply to the claims in the complaint, which concern the

allegedly deceptive manner in which Sprint presented a New York excise tax to wireless

telephone customers in New York. Second, Sprint requests that the Court strike Emilio's class

claims from the complaint, primarily because it asserts that the absent class members are subject

to binding arbitration provisions that prevent them from litigating their claims on a class basis.

### A.    Motion to Dismiss

The resolution of Sprint's motion to dismiss turns on whether principles of collateral

estoppel, also known as issue preclusion, bar Sprint from relitigating certain issues that Emilio

claims were decided in his favor by the arbitrator.[4]  "Collateral estoppel, or issue preclusion,

---

[4] The question whether federal or Kansas collateral estoppel law determines the effect of the
arbitration in this case is potentially a thorny one. However, it is unnecessary to resolve the issue

prevents parties or their privies from relitigating in a subsequent action an issue of fact or law

that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310

F.3d 280, 288 (2d Cir. 2002).  "The doctrine serves to 'relieve parties of the cost and vexation of

multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions,

encourage reliance on adjudication.'" *Envtl. Def. v. EPA*, 369 F.3d 193, 202 (2d Cir. 2004)

(quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

      "A party is collaterally estopped from raising an issue in a proceeding if: (1) the identical

issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the

previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the

resolution of the issue was necessary to support a valid and final judgment on the merits."

*Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation

marks omitted).

      Collateral estoppel principles apply to decisions in arbitration proceedings.  *See Bear,*

*Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) ("An arbitration decision

may effect collateral estoppel in a later litigation or arbitration if the proponent can show with

clarity and certainty that the same issues were resolved." (internal quotation marks omitted));

*Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) ("[C]ollateral estoppel can be

predicated on arbitration proceedings."); *Benjamin v. Traffic Exec. Ass'n E. RRs.*, 869 F.2d 107,

---

in this case.  While the elements of Kansas collateral estoppel law may differ somewhat from
those of federal collateral estoppel law, the differences do not appear to be material here, as
Sprint challenges only whether the KCPA issue was actually decided and necessary to the
judgment—elements that Kansas and federal collateral estoppel law share.  Furthermore, Sprint's
briefing exclusively cites the federal law of collateral estoppel.  The Court concludes that the
parties believe either that federal law applies or that there is no material difference between the
two in this case, and accordingly will apply federal preclusion law.  *See Bear, Stearns & Co. v.*
*1109580 Ontario, Inc.*, 409 F.3d 87, 91 n.3 (2d Cir. 2005) (applying federal collateral estoppel
law where "both parties rely on federal law on appeal" and "no one argues that the application of
state law would have made a difference").

114 (2d Cir. 1989) (collecting cases).  Accordingly, Sprint will be estopped from relitigating any

issue concerning which the confirmed arbitration award meets the conditions for collateral

estoppel.

Sprint contends that the applicable portion of the KCPA does not apply to the claims

asserted by Emilio and the class, and that Emilio has accordingly failed to state a KCPA cause of

action.  (Dkt. No. 57 ("Sprint Br.") at 10.)  The KCPA prohibits deceptive or unconscionable

acts during a "consumer transaction."  *See* Kan. Stat. Ann. §§ 50-626, -627.  The statute defines

a "consumer transaction" as the "sale, lease, assignment, or other disposition for value of

property or services within this state . . . to a consumer."  *Id.* § 50-624(c).  Sprint argues that

because Emilio "seeks to recover for a New York regulatory fee, which was applied to his New

York telephone bill for services that were delivered to him in York," Emilio therefore "did not

engage in a consumer transaction with Sprint that was 'within' the State of Kansas."  (Sprint Br.

at 10-11.)  The main precedent that Sprint cites on this point is nonbinding—a 2007 opinion in

which a Kansas federal district judge concluded that the KCPA did not extend to cover a lawsuit

arising from Sprint's manner of levying a Texas regulatory fee on a wireless customer.  *See*

*Montgomery v. Sprint Spectrum, L.P.*, No. 07-2227-JTM, 2007 WL 3274833, at *6 (D. Kan.

Nov. 6, 2007).

But the views of the Kansas district court, or of this Court, concerning the KCPA's

applicability are beside the point if the arbitrator's own construction of Kansas law is conclusive

in this action.[5]  Sprint contends that collateral estoppel does not apply because the issue of

---

[5] On a similar note, as the Second Circuit observed with regard to Arbitrator Roberts'
arbitrability determination: "Whether or not we agree with the Arbitrator's construction of the
contract or of the Kansas law by which it is governed, the parties bargained for the Arbitrator's
construction, not ours."  *Emilio*, 2014 WL 5840467, at *1.

whether the KCPA applied to Emilio's claim was not actually litigated and decided in the

arbitration proceeding.[6]   (Dkt. No. 69 ("Sprint Reply") at 2-3.)

Arbitrator Roberts issued three decisions during the course of the arbitration.  While the

first and third decisions focused on the question whether Emilio's class claims were subject to

arbitration, the ultimate holdings of those decisions are not dispositive as to whether the

arbitrator made a determination regarding whether the KCPA applies to Emilio's claim as part of

those decisions.  Indeed, "[t]he prior decision of [an] issue need not have been explicit, . . . if by

necessary implication it is contained in that which has been explicitly decided." *Postlewaite v.*

*McGraw-Hill, Inc.*, 333 F.3d 42, 48 (2d Cir. 2003) (brackets and internal quotation marks

omitted).

In the October 2006 decision, the arbitrator addressed the "enforceability of a class action

preclusion clause contained in an agreement between [Emilio] and [Sprint] with respect to the

arbitration of disputes regarding wireless telephone services."  (Oct. 2006 decision at 1.)  The

arbitrator concluded that "the class action preclusion provision in the Arbitration Agreement is

unenforceable because it violates the anti-waiver provisions of Kan. Stat. 50-625," a subsection

of the KCPA.  (*Id.* at 9.)  In the arbitration proceedings, Sprint contended—as it does here—that

the KCPA "does not apply to Sprint's contract with [Emilio] because the services provided . . .

do not constitute" a consumer transaction "within this state" pursuant to the statute.  (*Id.* at 9

n.2.)  The arbitrator rejected this argument, concluding that "Sprint's operations are

headquartered in Kansas, from which it unquestionably provides services to its customers

---

[6] Sprint does not argue that it did not have a full and fair opportunity to litigate the issue of the
KPCA's extraterritorial applicability, nor does the Court's own review of the records reveal any
limitation on Sprint's litigation of this issue.

throughout the United States." (*Id.*)[7]  The arbitrator thus explicitly considered and declined to adopt Sprint's position in the October 2006 decision.[8]

Sprint raised the issue again in a motion for summary disposition during the arbitration, when it argued that Emilio had failed to state a claim under the KCPA.  (July 2008 decision at 8.) Although Sprint cited *Montgomery*,[9] which had been issued in the intervening time by the Kansas federal district court, the arbitrator considered and summarily rejected the argument that the KCPA did not apply to Emilio's claim.  (*Id.*; *see also* Dkt. No. 17, Ex. 6; Dkt. No. 66, Ex. 1.) Finally, Arbitrator Roberts' 2011 Partial Final Award contained a reconsideration of the October 2006 arbitrability decision in light of *Stolt-Nielsen*, but nevertheless held—on the basis of the KCPA anti-waiver provision—that Emilio could not be forced to proceed with his claim in a bilateral arbitration.  (Award at 7.)  Accordingly, it is clear that the question of the KCPA's applicability to Emilio's claim was raised, actually litigated, and decided during the arbitration.

This decision was also necessary to the arbitrator's judgment.  As Arbitrator Roberts stated, the question underlying the October 2006 decision and the 2011 Award was whether "the arbitration clause at issue permitted the arbitration to proceed on behalf of a class."  (Award at 1.)  And as the Second Circuit held, "[t]he Arbitrator did nothing more than construe the parties' contract in order to decide the questions of arbitrability that the parties submitted to her."

---

[7] The arbitrator also concluded that it would be "manifestly unfair" for the contract to require the application of Kansas law while denying the application of the Kansas consumer protection statute.  (Oct. 2006 decision at 9 n.2.)

[8] Of course, the KCPA anti-waiver provision—the basis for Arbitrator Roberts' decisions— would likely be immaterial unless the arbitrator concluded that Emilio stated a claim under the KCPA.  Thus, even if the issue had not been explicitly decided, it appears that the arbitrator's holding would nonetheless constitute a decision on the applicability of the KCPA to Emilio's claim "by necessary implication."  *See Postlewaite*, 333 F.3d at 48.

[9] As the Court has previously noted, the Kansas district court's decision in *Montgomery* was arguably in tension with at least one Kansas state court decision at the time it was decided.  *See Watkins v. Roach Cadillac, Inc.*, 637 P.2d 458, 461-63 (Kan. Ct. App. 1981) (holding that a Kansas defendant may be liable under the KCPA if it solicited services outside of the state).

12

*Emilio*, 582 F. App'x 63; *see also Carlisle Power Transmission Prods., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 725 F.3d 864, 867 (8th Cir. 2013) ("The 2007 arbitration decision constituted a final judgment on the merits, because the arbitrator decided the sole legal issue presented—whether the grievance was subject to arbitration under the 2006 CBA."). On the basis of the anti-waiver portion of the KCPA, Arbitrator Roberts determined that the arbitration clause could not compel Emilio to bring his claim in a bilateral arbitration. The validity of the KCPA cause of action—also confirmed in the July 2008 denial of summary disposition on this ground—was a necessary predicate to the question decided in the Award. And when Sprint contended in this Court that the KCPA was inapplicable in its attempt to vacate the Award in part, the Court disagreed. *See Emilio*, 2014 WL 902564, at \*7 (rejecting Sprint's assertion that Arbitrator Roberts' decision was in manifest disregard of the law on the theory that "the KCPA clearly did not apply to Emilio's claims because the services at issue were not consumer transactions that occurred 'within the state' of Kansas" (brackets omitted)). The Second Circuit recently affirmed this Court's decision. *See Emilio*, 582 F. App'x 63 (holding that the arbitrator's KCPA ruling was not in manifest disregard of controlling law).

Sprint characterizes Emilio's position as "absurd" and contends that, under Emilio's reasoning, the arbitrator's rulings "have determined the substantive merit of his . . . KCPA claim against Sprint." (Sprint Reply at 3.) Sprint is incorrect. Emilio does not assert, and the Court does not hold, that the arbitrator made a binding decision as to whether Emilio's claims will be successful on the merits. Rather, the arbitrator concluded that the KCPA *applies* to transactions like Emilio's—a conclusion that was necessary to the arbitrator's determination that another portion of the KCPA precluded the contractual waiver of Emilio's ability to bring a class action.

Because the arbitrator's conclusion on this point meets the requirements for collateral estoppel,

Sprint's challenge to it is unavailing.[10]

Thus, regardless of the correctness of Arbitrator Roberts' interpretation of Kansas law, it

is conclusive here.  Sprint cannot now relitigate the point.  Sprint's motion to dismiss for failure

to state a claim under the KCPA is denied.

### B.      Motion to Strike

Sprint also requests that the Court strike the complaint's class allegations.  Sprint's

argument is premised on the contention that all class members other than Emilio are subject to

their own bilateral contractual agreements with Sprint, and that each such agreement has its own

mandatory arbitration provision.  (Sprint Br. at 13.)[11]  Sprint submits the declaration of one of its

employees, who asserts that all Sprint customers must sign its customer service agreement.  (Dkt.

No. 58 ¶ 3.)  The employee further avers that the agreement has remained "substantively

unchanged" between 2002 and 2007, except that an "express provision prohibiting class-wide

arbitration" was added in June 2004.  (*Id.* ¶¶ 4-5.)

Sprint's argument fails.  Emilio's second amended demand for arbitration stated that he

brought his arbitration action "individually and on behalf of a class comprised of all persons

who, during [a proposed class period], were Sprint wireless telephone service customers who

---

[10] Sprint argues in its reply brief that collateral estoppel does not apply where there has been a
change in the law.  (Sprint Reply at 5-8.)  However, Sprint's argument is directed only at the
Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, not at any shift in Kansas law.
No party claims that there has been a change in binding law concerning the application of the
KCPA since the arbitrator's decision.  Accordingly, this exception to collateral estoppel law is
inapplicable to the question of the KCPA's applicability to Emilio's claim.

[11] As noted above, motions to strike class allegations at this stage of the litigation are rarely
granted unless they address issues "separate and apart from the issues that will be decided on a
class certification motion."  *Chen-Oster*, 877 F. Supp. 2d at 117.  Because the question whether
other class members would be barred from pursuing a class action is distinct from the class
certification analysis under Rule 23, Sprint's motion is not barred on this ground.

paid 'New York State Excise Tax' . . . as part of their monthly charges." (Dkt. No. 66

("Weinstein Decl.") Ex. 2, ¶ 1.)  And the resulting Award issued by Arbitrator Roberts in 2011

expressly directed that Emilio be permitted to pursue a class action lawsuit in court.  (Award at 7

(holding that Emilio "must be given the opportunity to pursue his class claims in a court

action").)  This Court's February 11, 2014 Opinion and Order confirmed the Award and granted

Emilio leave to file a class action complaint.  *See Emilio*, 2014 WL 902564, at \*10.

According to Sprint, Emilio's class claims must be stricken because the other members of

the putative class are "all bound to binding arbitration clauses" (Sprint Br. at 13), which preclude

their joinder in class claims.  It is true that the absent putative class members were not parties to

the arbitration that resulted in the 2011 Award, but Sprint was a party to that arbitration, and it

agreed that the arbitrator's Award would be "final and binding."  (Petition Ex. A, at 8.)  Sprint

must therefore comply with the terms of the Award and this Court's judgment confirming the

Award.  Arbitrator Roberts' interpretation of the contract, reduced to judgment in her Award,

unambiguously authorizes Emilio to file a lawsuit to assert his KCPA claim as a class action in

court.  Sprint is therefore precluded from raising, as a defense to class certification or otherwise,

the arbitration clause of the other putative class members' agreements with Sprint.  To hold

otherwise would render the Arbitrator's judgment a nullity: the holding of the Award was that

Emilio must be permitted, pursuant to the contract, to raise his claim on behalf of a class of

similarly situated individuals.[12]  Sprint is therefore precluded by this Court's judgment from

---

[12] Emilio also looks to principles of collateral estoppel as a rationale for rejecting Sprint's motion
to strike the class allegations.  The Court need not reach this argument, however, because this
Court's own judgment affirming the Award, which has itself been affirmed on appeal, precludes
Sprint from raising a contract-based argument in opposition to class treatment of Emilio's claim.
Sprint must abide by the arbitrator's decision in an earlier stage of this very dispute—a decision
that the parties specifically agreed would be binding on them.  Whether or not collateral estoppel
applies, this decision comports with the principles animating the doctrine.  *See Comm'r v.
Sunnen*, 333 U.S. 591, 598 (1948) ("[M]atters which were actually litigated and determined in

asserting its contractual arbitration provision against the claims of the putative class members.

Sprint's motion to strike the class allegations is denied.

**IV.     Conclusion**

For the foregoing reasons, it is hereby ordered that Sprint's motion to dismiss or to strike

class allegations is DENIED.  Pursuant to Rule 12(a)(4), Sprint shall answer Emilio's complaint

within 14 days of notice of this decision.

The Clerk of the Court is directed to terminate the motion at docket number 56.

SO ORDERED.

Dated:  December 23, 2014
        New York, New York

                                                _____
                                                         J. PAUL OETKEN
                                                    United States District Judge

---

the first proceeding cannot later be relitigated.  Once a party has fought out a matter in litigation
with the other party, he cannot later renew that duel.").