UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VINCENT EMILIO, individually and on behalf :
of all others similarly situated, :
:
                                           Plaintiff, :        11-CV-3041 (JPO)
            -v-                                      :
:        OPINION AND ORDER
SPRINT SPECTRUM L.P., d/b/a SPRINT PCS, :
:
                                          Defendant. :
----------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       Plaintiff Vincent Emilio filed the Amended Complaint in this putative class action on September 8, 2015. (Dkt. No. 141.) Emilio alleges that Defendant Sprint Spectrum L.P. ("Sprint") violated the Kansas Unfair Trade and Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623 *et seq.*, by misrepresenting a discretionary charge as a mandatory tax imposed on customers by New York state, and by collecting more in state taxes from putative class members than Sprint ultimately remitted to the state. Sprint moves to dismiss the Amended Complaint. (Dkt. No. 148.) For the reasons that follow, the motion is denied.

**I.    Background**

       Familiarity with the complex history of this case is presumed.[1] The relevant background is as follows.

       Emilio is a resident of New York and a customer of Sprint wireless telephone service. His customer agreement with Sprint contains an arbitration agreement. In January 2005, Emilio filed a demand for class arbitration, asserting that Sprint was unlawfully charging customers a

---

[1] The Court has described the full procedural history of this action in previous opinions, including its 2014 decision denying Sprint's motion to dismiss. *See Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 511-14 (S.D.N.Y. 2014). (*See also* Dkt. No. 140.)

1

monthly fee to satisfy its obligations to pay "New York State Excise Tax." In December 2010, the arbitrator concluded that, while Sprint could not be compelled to proceed with class-wide arbitration, Emilio could not be compelled to proceed with bilateral arbitration and had to be "given an opportunity to proceed with his class claims in a court action." (Dkt. No. 1 at 49.) The arbitrator's holding was reduced to a partial final award, which Emilio petitioned this Court to confirm. On February 11, 2014, the Court granted Emilio's request to confirm the award and granted Emilio leave to file a class action complaint. (Dkt. No. 46.)

Emilio filed a putative class action complaint on February 25, 2014. (Dkt. No. 48.) Sprint moved to dismiss the complaint or to strike its class allegations, and the Court denied Sprint's motion on December 23, 2014. (Dkt. No. 77.) Emilio then moved to amend the complaint. (Dkt. No. 90.) The Court granted Emilio's motion (Dkt. No. 140), and Emilio filed an Amended Complaint on September 8, 2015, (Dkt. No. 141 ("Am. Compl.")).

In its Amended Complaint, Emilio asserts claims under KCPA §§ 50-626 and 50-627 on behalf of a putative class of Sprint customers who, between June 4, 2002 and June 30, 2007, paid excise taxes as part of their monthly charges. (Am. Compl. ¶ 1.) According to Emilio, New York law imposes excise taxes directly on Sprint, which made a "purely discretionary" decision to pass its overhead costs onto customers. (*Id.* ¶ 27.) Emilio alleges that Sprint misled its customers by failing to disclose that the excise taxes were discretionary charges. (*Id.* ¶ 28.) He also alleges that Sprint collected more in excise taxes from its customers than it ultimately remitted to New York. (*Id.* ¶ 29; *see also* Dkt. No. 168.)

Sprint moved to dismiss the Amended Complaint on October 16, 2015. (Dkt. No. 148.)

II. Discussion

In its motion to dismiss, Sprint argues that (1) Emilio's claims are time-barred; (2) the Amended Complaint fails to state a claim; and (3) some of Emilio's KCPA claims are barred by the doctrine of claim preclusion. Since filing that motion, Sprint has submitted a letter asserting that the action should be dismissed for lack of standing under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). (Dkt. No. 212.) The Court addresses these four arguments in turn.

A. Standing

"The 'irreducible constitutional minimum of standing contains three elements': (1) 'the plaintiff must have suffered an injury in fact,' i.e., 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there must be a causal connection between the injury and the conduct complained of'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Sprint argues that Emilio has failed to allege a sufficiently concrete injury to confer jurisdiction on the Court. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). This argument is unavailing. In his Amended Complaint, Emilio alleges that Sprint misrepresented the nature of the excise taxes on its bills, and in doing so, imposed a "hidden price increase" on Emilio beyond the parties' agreed-upon price for Sprint's wireless services. (Am. Compl. ¶¶ 2, 6; Dkt. No. 213 at 1 n.1.) The injury Emilio alleges—price deception—is both particular to him and concrete, *i.e.* "real and not abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1548 (quotation marks omitted); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377-78 (E.D.N.Y. 2010) ("[A] plaintiff is injured, suffering an

3

ascertainable loss, when he receives less than what he was promised."); *Story v. Attends Healthcare Prods., Inc.*, No. 15-CV-13577, 2016 WL 3125210, at *3-4 (E.D. Mich. June 3, 2016) (holding that plaintiffs had standing under *Spokeo*, 136 S. Ct. at 1540, where they alleged that defendants' "false and misleading representations" deceived them into "purchasing more expensive . . . products"); *cf. Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 453 (E.D.N.Y. 2013) (collecting price deception cases). Emilio's alleged injury is also traceable to Sprint's conduct and redressable through a favorable judicial decision awarding damages. He therefore has standing to assert his KCPA claims.

### B. Statute of Limitations

The parties agree that (1) Emilio's claims are governed by a three-year statute of limitations, (2) Emilio's claim accrued on or before January 2005, when he filed his arbitration demand, and (3) nine years passed between Emilio's arbitration demand and the first complaint in this action. (Dkt. No. 149 at 9; Dkt. No. 163 at 17.) They dispute whether the statute of limitations bars Emilio's claims in this case.

Emilio contends that the limitations period should be equitably tolled and that Sprint is estopped from asserting the statute of limitations because its own conduct prevented Emilio from filing a class action in federal court. Sprint argues that neither equitable tolling nor equitable estoppel applies because Emilio chose to pursue his claims in arbitration, and "[n]othing Sprint did caused Plaintiff to miss the deadline for filing his case." (Dkt. No. 149 at 13.)

Under Second Circuit precedent, "[t]o qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented her from filing her claim on time, and that she acted with reasonable diligence throughout the period she seeks to toll." *Parada v. Banco Industrial de Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (quoting *Phillips v. Generations*

4

*Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (alterations omitted)).[2]  While equitable tolling applies "only in rare and exceptional circumstances . . . it is sometimes necessary as a matter of fairness." *Phillips*, 723 F.3d at 150.  A court determines whether equitable tolling is warranted based on the circumstances of a specific case.  *Id.* at 155-56.

Equitable tolling is appropriate here.  As Emilio notes, Sprint's customer agreement contained a mandatory arbitration provision, which not only barred litigation but also imposed costs and fees on Emilio if he sought to proceed in federal court.  (*See* Dkt. No. 1 at 17-18.)  Those costs and fees applied even if Emilio filed a federal court action solely to seek a stay during the pendency of the arbitration.  (*Id.* at 18.)  Believing he was bound by these terms, that his case would be dismissed if filed, and that he would incur costs and fees as a result, Emilio made a class-wide arbitration demand in January 2005.  Sprint then filed a motion in Kansas state court seeking "to enjoin Emilio from continuing to arbitrate or litigate his claims in any forum." *Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041, 2014 WL 902564, at *2 (S.D.N.Y. Feb. 11, 2014).  In August 2008, Emilio petitioned the Honorable Barbara Jones to compel Sprint to arbitrate and to enjoin it from proceeding in Kansas state court.  *Id.*  Judge Jones granted Emilio's petition; the Second Circuit affirmed; and the parties returned to arbitration.

---

[2] The parties appear to concur that federal law governs this issue.  (*See* Dkt. No. 149 at 10-12 (applying federal case law); Dkt. No. 163 at 17 (same).)  *See also Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 n.3 (2d Cir. 2005) (applying federal collateral estoppel law where "both parties rel[ied] on federal law on appeal" and "no one argue[d] that the application of state law would have made a difference").  In any event, the application of Kansas law, which provides for equitable tolling, would produce the same result.  *See Wagher v. Guy's Foods, Inc.*, 885 P.2d 1197, 1205-06 (Kan. 1994) (affirming the lower court's determination that equitable tolling was warranted during the pendency of administrative proceedings); *see also Bloom v. FNU Arnold*, No. 107,372, 2012 WL 3966696, at *2 (Kan. Sept. 7, 2012) (discussing tolling principles under Kansas law).

*Id.*; *see also Emilio v. Sprint Spectrum, L.P.*, No. 08-CV-7147, 2008 WL 4865050 (S.D.N.Y. Nov. 6, 2008), *aff'd*, 315 F. App'x 322 (2d Cir. 2009).

In 2011, the arbitrator determined that Emilio's class claims could proceed in federal court.  (Dkt. No. 1 at 1, 49.)  Emilio then filed this action as a petition to confirm the arbitration award, and Sprint cross-petitioned to vacate the portion of the award that permitted Emilio to proceed with his class claims.  Judge Jones (who was assigned this case because it was related to the 2008 action) granted Sprint's petition to vacate the award in part.  *See Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041, 2012 WL 917535, at *2 (S.D.N.Y. Mar. 16, 2012).  The case then took another trip to the Second Circuit, which vacated Judge Jones' decision to the extent that it had vacated the arbitrator's award.  (*See* Dkt. No. 24.)  On remand to this Court, Emilio again moved to confirm the award and Sprint sought, for a second time, to vacate the award insofar as it permitted Emilio to bring claims in this forum.  *Emilio*, 2014 WL 902564, at *4.  The Court confirmed the award and granted Emilio leave to file a class action complaint on February 11, 2014.  *Id.*  Emilio filed that complaint two weeks later.  (Dkt. No. 48.)

As this complex and lengthy procedural history demonstrates, Sprint has repeatedly sought to prevent Emilio from litigating his claims in this forum, and Emilio has diligently prosecuted those claims.  Moreover, Emilio proceeds in this Court after initiating arbitration under a provision that was not only mandatory, but also penalized him if he filed in federal court solely to seek a stay—precisely the procedure that Sprint now asserts Emilio should have followed.  Given the unusual circumstances of this case, Emilio's diligence in pursuing his claims, and the fact that Sprint has been aware of Emilio's allegations since 2005, the Court concludes that equitable tolling is warranted "as a matter of fairness."  *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996); *see also City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637

F.3d 169, 175 (2d Cir. 2011) (noting that statutes of limitations exist to "prevent plaintiffs from unfairly surprising defendants"); *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1137 (N.D. Cal. 2009) (tolling a limitation period where plaintiff proceeded through mandatory arbitration before filing her claim).[3]  Emilio's claims are therefore timely.

### C.  Failure to State a Claim

Sprint next moves to dismiss for failure to state a claim.  In his Amended Complaint, Emilio assert claims under KCPA § 50-626 ("Section 626") and § 50-627 ("Section 627"). Section 626 prohibits "deceptive act[s] or practice[s] in connection with a consumer transaction." KCPA § 50-626(a).  Section 627 prohibits "unconscionable" acts or practices in the same context.  KCPA § 50-627(b).  The KCPA contains a non-exhaustive list of "deceptive" acts, which include: (1) making a representation with knowledge or reason to know that "the supplier has a . . . status, affiliation, or connection that the supplier does not have"; (2) willful use of "exaggeration, falsehood, innuendo or ambiguity as to a material fact"; and (3) willful concealment, suppression, failure to state, or omission of a material fact.  KCPA § 50-626 (b)(1)-(3).  The list of "unconscionable" acts in the KCPA includes taking "advantage of the inability of the consumer reasonably to protect [his] interests because of [his] . . . inability to understand the language of an agreement . . . ."  *Id.* § 50-627(b)(1).  To recover damages under any of these provisions, "a party must establish that he or she was 'aggrieved' by the violation of the [KCPA]."  *Via Christi Reg'l Med. Ctr. v. Reed*, 314 P.3d 852, 863 (Kan. 2013) (citing KCPA §§ 50-624(a), (b).).  The Kansas Supreme Court has expressly held that the KCPA "is to be construed liberally in order to protect consumers . . . ."  *Id.* at 863-64.

---

[3] Because the Court concludes that equitable tolling is warranted, it need not address the parties' other arguments concerning the statute of limitations.

Sprint offers two arguments for dismissal of Emilio's KCPA claims. It contends, first, that there was "nothing deceptive [or unconscionable] about the manner in which Sprint billed its customers," and second, that Emilio has not adequately alleged that Sprint acted with the requisite knowledge or willfulness required to trigger liability under Kansas law. (Dkt. No. 149 at 18, 21, 23.)

Both of these arguments fail. In the Amended Complaint, Emilio alleges that Sprint failed to clearly disclose in its bills and customer agreement that excise taxes were discretionary rather than mandatory charges. (Am. Compl. ¶ 28.) Specifically, Emilio alleges that, at various points during the putative class period, Sprint (1) "expressly included 'excise taxes'" in a list of taxes levied directly on customers by the government; (2) listed excise taxes separately from discretionary "surcharges"; and (3) "buried" disclosures that "purported to explain the difference between taxes and surcharges" in "extremely small, difficult-to-read print" on the back page of the first page of its bills, where "no one was likely to see or read them because they were completely removed from the detailed billing information" on the third page of the bills. (*Id.* ¶¶ 29-31.) Emilio also alleges that, when Sprint amended its billing practices in 2003 to include an explanation of the distinction between taxes and surcharges, "it did so [in a disclosure that made] multiple references to 'federal and state mandates,'" and thereby continued to mislead customers. (*Id.* ¶ 31.)

With respect to mental state, Emilio alleges that the structure and font of Sprint's bills were purposefully deceptive. (*Id.*) He also alleges that Sprint continued its billing practices after entering an agreement with the Attorneys General of thirty-two states prohibiting the use of bills that represent "discretionary cost recovery fees as taxes" (the "AVC") (*Id.* ¶ 20), and after the Federal Communications Commission issued a report addressing misleading discretionary line

item charges (the "TIB Second Report") (*Id.* ¶ 22).  Emilio does not assert independent claims under the AVC or the TIB Second Report, but rather, invokes them in support of his allegation that Sprint acted with sufficient knowledge and willfulness to support a claim for relief under the KCPA.

Together, these allegations are sufficient to "nudg[e] [Emilio's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Sprint's argument to the contrary—which is, essentially, that its billing practices were not in fact misleading—is unavailing at this stage of the litigation, where the Court must assume that Emilio's assertions are true and draw all inferences in his favor.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted); *see also Wenner v. Bank of Am., NA*, 637 F. Supp. 2d 944, 956 (D. Kan. 2009) ("[T]he guiding principle to be applied in interpreting the KCPA is that the act is to be liberally construed in favor of the consumer. And generally, the question of whether a deceptive act or practice has occurred under the KCPA is . . . a question of fact . . . .") (citations omitted)); *State ex rel. Stovall v. ConfiMed.com, L.L.C.*, 38 P.3d 707, 713-14 (Kan. 2002) ("[T]he determination of unconscionability involves not only a review of the written documents but also consideration of the witness testimony as to actions surrounding the transaction.").  Given the Rule 12(b)(6) standard and the allegations in the Amended Complaint, the Court concludes that Emilio has sufficiently pleaded violations of the KCPA to avoid dismissal of his claims.

    **D.**    **Issue Preclusion**

Sprint's final argument is that, to the extent that they rely on the Sprint customer service agreement, Emilio's claims are barred by the doctrine of issue preclusion.  (Dkt. No. 149 at 24.)  Specifically, Sprint contends that "any disputes regarding the disclosures contained in the

customer service agreement have already been resolved" by the arbitrator, who dismissed Emilio's breach of contract claim in 2008. (*Id.*; Dkt. No. 150-6.)

As noted in the Court's December 2014 opinion denying Sprint's prior motion to dismiss, "[c]ollateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."[4] *Emilio*, 68 F. Supp. 3d at 515 (citation omitted). Under Second Circuit precedent, "[a] party is collaterally estopped from raising an issue in a proceeding if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* (citing *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)).

In the arbitration at issue, Emilio alleged that Sprint's billing practices breached the parties' customer service agreement because that agreement "did not 'clearly' authorize pass through of the Excise Tax." (Dkt. No. 150-6 at 7.) The arbitrator dismissed Emilio's contract claim on the ground that the customer service agreement "provided broad and comprehensive authority for the recovery of taxes and other charges levied by the government." (*Id.*) The arbitrator determined, in other words, that the parties' contract permitted Sprint to recoup its tax costs from customers.

The arbitrator did not, however, decide whether the manner in which Sprint disclosed those discretionary charges violated Sections 626 and 627 of the KCPA. The resolution of that issue was not necessary to the arbitrator's ruling on Emilio's contract claim, and it remains to be

---

[4] The Court has previously addressed the applicability of federal as opposed to Kansas collateral estoppel law. *Emilio*, 68 F. Supp. 3d at 515 n.4. For the reasons stated in that opinion, the Court continues to apply federal law to this aspect of the parties' dispute.

fully litigated here. *See Emilio*, 68 F. Supp. 3d at 518. Accordingly, issue preclusion does not apply to Emilio's KCPA claims, including allegations concerning the deceptiveness and unconscionability of disclosures in Sprint's customer service agreement.

### III.   Conclusion

For the foregoing reasons, Sprint's motion to dismiss the Amended Complaint is DENIED. The Clerk of Court is directed to close the motion at docket number 148.

SO ORDERED.

Dated: July 7, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge